

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

FEB 23 2010

Feb 23. 2010
Judge Samuel Der-Yeghiayan
U.S. District Court

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 10 CR 0086 |
| vs. ) | Judge Samuel Der-Yeghiayan |
| ) | |
| TEDDIE KOSSOF ) | |

## PLEA AGREEMENT

1.      This Plea Agreement ("Agreement") between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant TEDDIE KOSSOF, and his attorney, THEODORE A. SINARS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The information in this case charges defendant with making a false statement in a Form 1120, a federal tax return for a corporation, in violation of Title 26, United States Code, Section 7206(1).

3.      Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.      By this Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information charges that defendant did willfully make and subscribe, and caused to be made and subscribed, a false U.S. Corporation Income Tax Return, Form 1120 with schedules and attachments, in violation of Title 26, United States Code, Section 7206(1).

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in the information.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:   On or about March 25, 2005, in the Northern District of Illinois, Eastern Division, defendant willfully did make and subscribe, and caused to be made and subscribed, a United States Corporation Income Tax Return, Form 1120 with schedules and attachments, for Teddie's Hair Designers, Inc. for calendar year 2004, which return was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service ("IRS"), which income tax return defendant did not believe to be true and correct as to every material matter,  in that the return reported on Line 1a that Teddie's Hair Designers, Inc.'s gross receipts or sales were $3,840,161 when, in fact, as defendant then well knew, Teddie's Hair Designers, Inc. had gross receipts or sales in excess of that amount, defendant having diverted cash for a

variety of business and personal expenses, and under reported gross receipts in the amount of approximately $275,984, in violation of Title 26, United States Code, Section 7206(1).

Specifically, beginning in approximately 1975 and continuing to the present, defendant was the president and sole shareholder of Teddie's Hair Designers, Inc., a corporation located in Northfield, Illinois. Teddie's Hair Designers, Inc. owned and operated the Teddie Kossof Salon, which provided hair salon and spa products and services in Northfield, Illinois. As the president and sole shareholder of Teddie's Hair Designers, Inc., defendant was required to report accurately all of Teddie's Hair Designers, Inc.'s income and expenses on a U.S. Corporation Income Tax Return, Form 1120.

During 2004, Teddie's Hair Designers, Inc. received gross receipts or sales from its operation of the Teddie Kossof Salon ("Salon"), which included payments made by Salon customers for various hair salon and spa products and services. Salon customers made these payments to Salon employees by tendering checks, credit cards, gift certificates, or cash. Defendant caused the Salon employees to place the payments, in the form of checks, credit card receipts, gift certificates and cash, into the Salon's register drawers and, at the same time, to record information reflecting the amount of each payment and its form into the Salon's computer system. The computer system was used to track the payments and reconcile the aggregate payments on a regular basis. At the end of each shift, defendant caused Salon employees to reconcile separately the form and amount of payments to a computer system generated report. Once reconciled, the Salon employees gave the respective

3

drawer's checks, credit card receipts, gift certificates, cash and the report to defendant.  On a daily basis, defendant reviewed these totals and then prepared a locked deposit bag, into which defendant placed the checks and cash for deposit to the business's bank account.

On numerous occasions during 2004, however, defendant did not include all of the day's cash for deposit to the business's bank account.  Instead, over the calendar year, defendant took different amounts of cash from various deposits, and defendant then diverted that cash for a variety of business and personal purposes.  In total, defendant diverted or skimmed approximately $275,984.  Of this amount, defendant diverted substantial amounts to himself, and defendant used these amounts for various personal expenses, spending some of the money in cash for his own uses and, separately, depositing some amounts into his personal bank account and drawing down the funds for various personal uses.  Defendant also used approximately $95,720 of the diverted monies to pay various employees additional wages in cash, which amounts defendant failed to report to the IRS as payroll expense on quarterly Forms 941.  Thus, defendant failed to pay the associated employment tax.  In addition, defendant used approximately $14,277 of the diverted monies to pay certain business expenses.

Thereafter, defendant intentionally provided false and misleading records to his accountant for the preparation of Teddie's Hair Designers, Inc.'s Form 1120 for 2004. Defendant gave the accountant the business's bank account records, including bank statements, and defendant told the accountant that the records accurately reflected the

business's total gross receipts and sales for 2004.  Defendant knew that those bank account records did not include the amounts of cash that defendant had diverted from the business. Further, defendant intentionally failed to disclose to the accountant the computer generated records that identified the corporation's sales, which included the diverted cash.  In total, on the United States Corporation Income Tax Return, Form 1120 with schedules and attachments, for Teddie's Hair Designers, Inc. for calendar year 2004, defendant willfully and knowingly failed to report additional gross receipts in the total amount of approximately $275,984 and thus failed to identify an additional tax due and owing (after the proper deduction of certain expenses) of approximately $53,600, in violation of Title 26, United States Code, Section 7206(1).

7.    Defendant also acknowledges that for purposes of computing his sentence under the U.S. Sentencing Guidelines, the following conduct, to which defendant stipulates, constitutes other instances of defendant making false statements regarding the income, expenses and the tax liabilities of Teddie's Hair Designers, Inc. and, additionally, instances of defendant making false statements regarding his personal income and tax liabilities, in violation of Title 26, United States Code, Section 7206(1), and defendant admits that all these facts constitute relevant conduct under Section 1B1.3 of the Guidelines beyond a reasonable doubt, as follows:

a.    As part of the same course of conduct and as part of a common scheme and plan relating to the offense of conviction, defendant also failed to report all of Teddie's

Hair Designers, Inc.'s gross receipts or sales for calendar years 2002 and 2003. Specifically, in approximately early 2000, defendant caused the Salon to acquire the computer system identified in paragraph 6, above, for use in the operation of the Salon's business. Thereafter, and for calendar years 2002 and 2003, respectively, defendant followed the practice described above in paragraph 6, whereby defendant caused (1) Salon employees to place checks, credit card receipts, gift certificates and cash payments received for hair salon and spa products and services into the Salon's register drawers and, at the same time, to record information reflecting the amount of each payment and its form into the Salon's computer system; and (2) Salon employees to reconcile separately, at the time each register was closed at the end of a shift, the form and amount of payments to a computer system generated report. On a daily basis, defendant received and reviewed these totals and defendant then prepared a locked deposit bag, into which defendant placed the checks and cash for deposit to the Salon's business bank account.

On numerous occasions in 2002 and 2003, however, defendant did not include all of the day's cash for deposit to the business's bank account. Instead, over calendar years 2002 and 2003, defendant took different amounts of cash from various deposits and defendant diverted the cash for a variety of business and personal purposes. In total, defendant diverted or skimmed, in 2002, approximately $193,423, and in 2003, approximately $291,449. Of these total amounts, defendant diverted substantial amounts to himself, and defendant used these amounts for various business and personal expenses, spending some of the money in

6

cash for his personal uses and, separately, depositing some amounts into his personal bank account and then drawing down the funds for his personal uses.  In addition, in 2003, defendant caused the corporation to pay certain of his personal expenses.  Defendant also used significant amounts of the diverted cash to pay various employees additional wages in cash, which amounts defendant failed to report to the IRS as payroll expense on quarterly Forms 941, and thus failed to pay the associated employment tax.

For both 2002 and 2003, defendant intentionally provided false and misleading records to his accountant for the preparation of Teddie Hair Designer, Inc.'s Form 1120 for 2002 and 2003, respectively.  Defendant gave the accountant the business's bank account records, including bank statements, and defendant told the accountant that the records accurately reflected the business's total gross receipts and sales for 2002 and 2003, respectively.  Defendant knew that those bank account records did not include the amounts of cash that defendant had diverted from the business.  Further, defendant intentionally failed to disclose to the accountant the computer generated records that identified the business's actual sales, which included the diverted cash.

To summarize, and including the information for 2004 set forth in paragraph 6, above, defendant willfully and knowingly diverted and skimmed cash from the corporation and willfully and knowingly failed to report those additional gross receipts or sales and failed to identify tax due and owing (after the proper deduction of certain expenses) on the Form

1120s, as follows:

| Year | Understatement of Gross Receipts | Additional Corporate Tax Due |
|------|----------------------------------|------------------------------|
| 2002 | $193,423 | $ 5,515 |
| 2003 | $291,449 | $ 55,245 |
| 2004 | $275,984 | $ 53,600 |
| Total: | $760,856 | $114,360 |

b.      With respect to defendant's individual federal income tax returns for calendar years 2002, 2003, and 2004, respectively, defendant did willfully make and subscribe a false federal individual tax return, Form 1040 with schedules and attachments, which return was verified by a written declaration that it was made under the penalties of perjury and filed with the IRS, which returns defendant did not believe to be true and correct as to every material matter regarding the income of defendant and his wife and the tax due and owing for each year.  Specifically, for each year, defendant willfully and knowingly: failed to report as income certain amounts of cash he diverted and skimmed from Teddie's Hair Designers, Inc. in 2003 and 2004; failed to report as income the certain personal expenses he caused the corporation to pay; failed to disclose this information to the accountant that prepared his individual federal income tax returns; and failed to identify accurately the income of defendant and his wife and the tax due and owing on the Forms

1040.

The government asserts that the understatement of income, including the amount of diverted and skimmed gross receipts attributable to defendant individually, is as follows:

| Year | Understatement of All Gross Receipts Less Business Expenses Plus Personal Expenses Paid by the Corporation | Additional Individual Income Tax Due |
|------|------|------|
| 2002 | $ 93,319 | $ 31,726 |
| 2003 | $ 188,852 | $ 57,724 |
| 2004 | $ 174,992 | $ 61,860 |
| Total: | $ 457,163 | $151,310 |

As set forth below, in paragraph 10b.ii., defendant disagrees as to the amount of diverted and skimmed gross receipts attributable to him individually as income and disagrees as to the applicable tax rate and thus disagrees as to the amount of additional individual income tax due and owing on each of the Forms 1040, and defendant reserves the right to argue as to these amounts.

        c.     With respect to Teddie's Hair Designers, Inc.'s Forms 941 for calendar years 2002, 2003, and 2004, respectively, defendant did willfully fail to report cash wages paid to certain employees and thus failed to pay related employment tax due and owing, as follows:

| Year | Employee Cash Payments Not Reported | Additional Employment Tax Due |
|------|-------------------------------------|-------------------------------|
| 2002 | $ 85,720 | $ 12,448 |
| 2003 | $ 90,720 | $ 13,558 |
| 2004 | $ 95,720 | $ 14,322 |
| Total: | $272,160 | $ 40,328 |

## Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty, carries the following statutory penalties:

a.      A maximum sentence of 36 months of imprisonment and a maximum fine of $250,000.  Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that the judge also may impose a term of supervised release of not more than one year.

b.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on certain points and disagree on others, as follows:

a.     **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2009 Guidelines Manual.

b.     **Offense Level Calculations.**

i.     Pursuant to Guideline Section 2T1.1(a)(1), the parties agree that the base offense level for the offense charged in the information and the relevant conduct in paragraphs 6 and 7, above, is determined by the amount of the tax loss pursuant to Guideline Section 2T4.1.

ii.     Pursuant to Guideline Sections 2T1.1(a)(1) and 2T4.1(G), the government contends the corporate income tax due and owing for the years 2002, 2003 and 2004 is the total amount of $114,360; that the individual income tax due and owing for the years 2002, 2003 and 2004 is the total amount of $151,310; and that the employment net tax due and owing for the years 2002, 2003, and 2004 is the total amount of $40,328, or a sum total of $305,998, and thus the base offense level is level 18.   Defendant agrees that the corporate income tax due and owing for the years 2002, 2003 and 2004 is the total amount of $114,360, and that the employment net tax due and owing for the years 2002, 2003, and 2004 is the total amount of $40,328.  However, as to the individual income tax due and

owing for the years 2002, 2003 and 2004, defendant disagrees as to the amounts of diverted and skimmed gross receipts attributable to him individually as income and disagrees as to the applicable tax rate and thus disagrees as to the amount of additional income tax due and owing on each of the Forms 1040, and defendant reserves the right to argue these amounts.

       iii.     If the Court finds that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct and the government does not receive evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline Section 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any restitution or fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

       iv.     In accord with Guideline Section 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline Section 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the government contends that the anticipated offense level is 15, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 18 to 24 months of imprisonment, in addition to any supervised release and fine the Court may impose. Defendant disagrees as to the anticipated offense level because he disagrees, as set forth above, as to the amount of the individual income tax due and owing for the years 2002, 2003 and 2004.

      e.     Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Defendant and his attorney and the government acknowledge that the above Guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different of additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

g.      Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P.11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

14

## **Agreements Relating to Sentencing**

11.    The government agrees to recommend that the Court impose a sentence within the applicable advisory Guidelines range.   Defendant is free to recommend any sentence.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Regarding restitution, the government contends that the total amount of restitution owed to the Internal Revenue Service is $305,998, minus any credit for funds repaid prior to sentencing.  Pursuant to Title 18, United States Code, Section 3663(a)(3), defendant agrees that he is required to make full restitution to the IRS in an amount determined by the Court at the time of sentencing.  Defendant further understands that this restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

14.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

15.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him and related matters.  The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including all recent income tax returns as specified by the probation officer.  Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline Section 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline Section 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of the corporate income tax returns of Teddie Hair Designers Inc. and defendant's individual income tax returns (together with schedules,

16

extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 10 CR 0086.

19.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

20.     Defendant understands that nothing in this Agreement shall limit the IRS in its collection of any taxes, interest or penalties from defendant, defendant's former spouse, defendant's corporations or partnerships. Defendant understands that the amount of tax as

calculated by the IRS may exceed the amount of tax due as calculated for the criminal tax case.

### Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.     **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate

18

in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

   iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

c.    **Appellate rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed and defendant knowingly waives the right to appeal his conviction and any pre-trial rulings by the Court in exchange for the concessions made by the United States in this Agreement.  Defendant may only appeal the sentence imposed.

d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs.  Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

22.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

23.    Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant, his former spouse, defendant's corporations, or partnerships which directly or

indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest and penalties that may be assessed by the IRS.

24.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed.R.Cr.P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

## **Conclusion**

25.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

26.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

28.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement to cause defendant to plead guilty.

29.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney.   Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _February 23, 2010_

PATRICK J. FITZGERALD
United States Attorney

TEDDIE KOSSOF
Defendant

KAARINA SALOVAARA
Assistant U.S. Attorney

THEODORE A. SINARS
Attorney for Defendant