UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 10 CR 86 |
| | ) | |
| TEDDIE KOSSOF | ) | Judge Samuel Der-Yeghiayan |

DEFENDANT'S SENTENCING MEMORANDUM

ON LEGAL ISSUES

Now comes the defendant, Teddie Kossof, by and through his attorney, Theodore A. Sinars, Madden, Jiganti, Moore & Sinars, LLP, and files this memorandum on two legal sentencing issues:

There are two legal issues to be decided by the court. The issues relate to the amount of tax loss attributed to Mr. Kossof's individual 1040 and the rate of tax to be applied to that amount. The PSI [page 5] correctly defines the tax loss range depending on the Court's final determination of these two issues as $305,998; $240,990; $189,253; or $177,026. After following the government's position on income attributed to Mr. Kossof's 1040 and the defense position on the qualified dividend rate of tax, the PSI concluded the tax loss was $240,990.

Issue 1

Factual Background

1

The parties agree that the tax loss for sentencing guidelines purposes is the total of the corporate return tax loss plus the individual return tax loss.  The parties also agree on the amount of the corporate Form 1120 tax loss; but they disagree on the government's computation of the tax loss on the individual Form 1040 tax return.  In many sentencing cases involving a corporation and it's shareholder, this double tax on the same income is not an issue because the corporation is either a Subchapter S corporation or a Limited Liability Company [LLC] where the corporation pays no income tax because all of the corporate income flows to the individual shareholder's return.  Thus, the same income is taxed only once – at the individual level.  Since in this case the corporation is a regular C corporation, we must consider, fairly or not, two levels of tax loss on the same money.  The government calculation simply taxes the money twice, once at the corporate level and once at the individual level.  The government's claimed $1.49 million understatement of gross receipts represents the total gross receipts to the corporation ($760,856), a duplicate $272,160 to employees and a duplicate $457,163 to the individual defendant.

The parties agree that the government can only trace to Mr. Kossof a relatively small portion of the understated corporate

income, specifically: for 2002 - $35,127.00; for 2003 -
$39,221.00; and for 2004- $30,085.00 or a total of $104,433.00
additional taxable income.  The government's presumption would
define the individual additional taxable income as $457,163.
The defendant further asserts that absent proof that the
defendant shareholder received unreported corporate income in
excess of $104,433.00 the tax loss should properly be calculated
only on that amount.

The government claims that it does not have to prove the
additional amounts because of its case citations and a
presumption exists under Application note 7 [Section 2T1.1] that
the defendant/sole shareholder receives all of the corporation's
unreported income whether the government can prove it or not.
The government's citations do not support its conclusion and
there is no such presumption under Application note 7.  The
defendant's position is that, particularly in a circumstance of
double taxation on the same money, the government must prove
that the defendant received these amounts to include them in the
individual tax loss computation for sentencing guideline
purposes.  The amount of additional alleged amounts at issue is:
for 2002 - $58,192.00; for 2003 - $149,631.00; and for 2004 -
$144,907.00.  Under the government's theory, its computed tax
loss would exceed $200,000 and thus put the defendant in a net

3

offense level 15 or 18-24 months.  If the defendant's position
is correct, the tax loss will be less than $200,000 and the net
offense level would be 13 or a sentencing guideline range of 12
to 18 months.


Legal Discussion

After five years of audit and investigation the government
admits it was not able to trace the ultimate disposition or use
of substantial proceeds which have been taxed to the
corporation.  The government's position is that every dollar of
the corporate income understatement should be charged to Mr.
Kossof's personal 1040 because he had control over the corporate
cash while in the corporate offices.  This reasoning literally
would mean every time a sole shareholder would receive corporate
proceeds while in the corporate offices he would be personally
taxed on any proceeds not then deposited.  The facts in the
cited government cases do not support this conclusion.  In all
three citations, the corporate proceeds were traced to the
defendant's control outside the corporate premises.

For example, in United States v. Toushin, 899 F. 2d 617
(7th Cir. 1990), the evidence showed the defendant put the money
in a shoulder bag and removed the cash from the corporate
premises.  In the United States v. Thetford, 676 F. 2d 170 (5th

4

Cir. 1982), employees took the cash proceeds from Texas, Florida and Ohio operations and transmitted them to the defendant personally.  In the United States v. Tarwater, 308 F. 3d 494 (6th Cir. 2002) the government did trace the funds to the defendant's personal bank accounts.  None of these cases equate with the facts of our case where the government acknowledges it cannot trace the funds beyond the corporate premises.  In addition, the government acknowledges in the plea agreement that unreported gross receipts were used for both personal and business purposes

The Seventh Circuit has specifically held that the government must prove the amount of the tax loss by a preponderance of the evidence.

> "Amount of loss must be determined 'on the basis of the conduct of conviction and relevant conduct'" United States v. Frith, 461 F. 3rd 914,917 (7th Cir. 2006). "Relevant conduct must be criminal or unlawful conduct…." Id. The government has the burden of proving losses attributable to relevant conduct by preponderance of the evidence." United States v. Schroeder, 536 3rd 746 (7th Cir. 2008).

The government has acknowledged to defense counsel that in the normal Internal Revenue Service corporate "skim" [constructive dividend] investigation the Internal Revenue Service focuses on proving the individual shareholder's specific receipt and use of corporate funds to define the amount of the shareholder's unreported income.  These "constructive dividends"

5

are then carried back to the corporation because they were either unreported gross income or mischaracterized deductions on the corporate return.  See, e.g., <u>Boulware v. United States</u>, 552 U.S. ___, 128 S. Ct. 1168 (2008).   Thus, as in <u>Boulware</u>, the government specifically proves the amount of income received by the individual and then traces that income back to its source, i.e., the corporation.  Thus, the individual's unreported income is used to define the corporation's unreported income since the corporation clearly was proved to be the source.

In our case, the government has acknowledged the investigation is the reverse.  The Internal Revenue Service investigated Teddie's Hair Designers, Inc. to determine if there had any been understated income.  We agree that there was unreported corporate income in the amount set forth in the Plea Agreement.  However, despite an exhaustive five year audit and investigation, the IRS could only prove that the defendant received a relatively small portion of these amounts.

In Application 7 there is no mention of any presumption that the entire corporate underreporting should be attributed to the individual sole shareholder.  In fact, the clear direction is the government must prove the individual defendant diverted the money to his own use.  In this case, the government did

tender some evidence of diversion with respect to specific items and the defendant, as noted above, conceded those amounts. However, the government cannot take a presumptive leap that all the corporate funds somehow were taken and used personally by the defendant.  This is precisely the conclusion made by the Seventh Circuit in Schroeder:

> "[The district] Court seems to suggest that the
> government had met its burden of proof merely by
> submitting admissible evidence, as opposed to proving
> the amount of the tax loss by a preponderance of the
> evidence.  Indeed, the Court never found that the
> government proved the tax loss by a preponderance of
> the evidence."

The government's position contradicts both the Seventh's Circuit's direction in Schroder and the Federal Sentencing Guidelines.  See, e.g., Federal Sentencing Guidelines section 6A1.3.  Application 7 and its explanation both specifically state that the individual shareholder's tax loss is premised on a determination that the individual shareholder "diverts the funds to the defendant's own use and does not report these funds on the defendant's individual tax return" (Emphasis added.)  By requiring a finding that the defendant diverted the funds to his own use, the government has the burden to prove such.  This burden has not been met.  In essence, the government's position is that we cannot find it but "he must have it" or "he must have

spent it" personally.  The defendant can just as easily argue
that the corporation spent those funds on business purposes:
for example, that excess cash was accumulated by the corporation
and later deposited to the corporate bank account or cash was
used at numerous charitable events related to corporate
business, or business supplies were purchased with cash, etc.
The defendant may not be able to prove these expenditures by
written documentation to the government's satisfaction.
However, the government cannot prove the receipt of the funds by
the individual defendant and it is the government which has the
burden of proof.

     Furthermore, the plea agreement itself acknowledges that
the understated corporate gross receipts were used for both
business purposes and personal purposes.  In the plea agreement
the defense received credit for some business deductions it
could prove to the government satisfaction.  This does not mean
that those amounts were the only amounts spent for business
purposes in these years or even held by the corporation for
future expenses.

     What is clear is that for criminal sentencing purposes the
government has the burden of proving tax loss attributable to
relevant conduct by a preponderance of the evidence.  It cannot

meet this burden by some assumed presumption and speculation. The tax loss computation here is significant because it would adjust the sentencing guidelines downward by two levels under the defendant's position and significantly reduce the restitution amount.  We believe we are correct and such adjustment should be made.

Issue 2

     In computing the tax loss attributed to the defendant's individual income tax returns for 2003 and 2004 the government refused to apply the Internal Revenue Code qualified dividend tax rate provisions to amounts determined to have been diverted to the defendant/sole shareholder from the corporation.  Rather, the government has applied the regular tax rates.  Pursuant to the government's schedule, the additional taxable income attributed to the defendant individually as diverted income received from the corporation are: 2003 - $188,852 and 2004 - $174,992.  The defendant's position is for computing the tax loss, any amounts diverted from the corporation are to be classified as constructive dividends and the applicable Internal Revenue Code tax rate provisions on qualified dividends should be used to compute a more accurate computation of tax loss.  The probation officer's report has determined the defense position is correct.

The government continues to call the unreported income in this case "skim" or "diversion of funds" to claim it should be taxed at ordinary income rates.  In actuality, whatever the government attempts to call the unreported income, under tax law it is defined as a "constructive dividend".  This was confirmed by the United States Supreme Court in <u>Boulware v. United States</u>, 552 U.S __, 128 S. Ct. 1168 (2008).  In <u>Boulware</u>, the Court treated all alleged shareholder "skims" and "diversions" as distributions of property made by a corporation to a shareholder with respect to its stock which is to be treated as a <u>dividend</u> as defined by the Internal Revenue Code.  This conclusion was made in the face of government allegations that Boulware systematically diverted funds from his corporation in order to support a lavish lifestyle.

> [Boulware] gave millions of dollars of HIE [the corporation] money to his girlfriend… and millions of dollars to his wife… without reporting any of this money on his personal tax returns…. [H]e siphoned off this money primarily by writing checks to employees and friends and having them return the cash to him, by diverting payments by  HIE customers, by submitting fraudulent invoices to HIE, and  by laundering HIE money through companies though the  Kingdom of Tonga and Hong Kong."

Despite government attempts to characterize the shareholder's use of corporate funds, the Supreme Court

concluded any such distribution is to be treated as a

"constructive dividend" and taxed in accordance with the

Internal Revenue Code taxation of dividends.


> "The colorful behavior described in the allegations
> requires a reminder that tax classifications like
> "dividend" and "return of capital" turn on "the objective
> economic realities of a transaction rather than … the
> particular form the parties employed.
>
>                      * * *
>
> "… the tax consequences of a "distribution by a corporation
> with respect to its stock" depend, not on anyone's purpose
> to return capital or to get it back, but on facts wholly
> independent of intent.  …"

The Supreme Court determined in these circumstances that

any distribution from a corporation – whatever artful words

deemed by the government – is to be taxed as a dividend pursuant

to the provision of the Internal Revenue Code Sections 301 and

316.  The tax is purely computational.  Thus, any corporate

distribution to an individual shareholder is ordinary income

except to the extent the dividends constitute "qualified

dividend income" as defined in Code Section 1(h)(11).  Internal

Revenue Code Section 301 (c)(1).  "Qualified dividend income"

means dividends received by an individual shareholder from a

domestic corporation and it is taxed as capital gain [15

percent] rather than ordinary income.  Code Section 1(h) (11).

It is undisputed Teddie's Hair Designers, Inc., is a domestic

corporation and Teddie Kossof is an individual sole shareholder.

Thus, the tax loss computation for the individual 1040 return

must use the qualified dividend capital gain rates.


Respectfully submitted


_____"/s/"_____
Theodore A. Sinars
Attorney for Defendant
Madden, Jiganti, Moore and Sinars
190 South LaSalle Street, Suite 1700
Chicago, Illinois 60603
(312)346-4101